# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SASOL NORTH AMERICA, INC., et al., | ) |
| | ) |
| Movants, | ) |
| | ) |
| v. | )   Case No. 14-mc-218-JWL-KMH |
| | ) |
| KANSAS STATE INSTITUTE FOR | ) |
| COMMERCIALIZATION, et al. | ) |
| | ) |
| Respondents. | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the court on movants' motion to compel compliance with their third party subpoena to respondents (Doc. 1). As explained in greater detail below the motion is GRANTED IN PART and DENIED IN PART.

### Background[1]

This motion arises from a subpoena issued in a patent infringement and trade secret case currently pending in the Southern District of Texas, *Sasol North America et al v. GTLpetrol LLC, et al.*[2] The subject of that dispute is the technology for converting natural gas to higher value liquid fuel, a process known as "gas to liquid" ("GTL"). Sasol Technology is a South African energy and chemical company which expanded into the United States with its Sasol North America branch (collectively referred to as "Sasol").

---

[1] The "Background" section is based on the parties' pleadings and briefs and should not be construed as judicial findings or factual determinations concerning the parties' complex business relationships.

[2] *Sasol North America et al. v. GTLpetrol LLC, et al.*, Case No. 4:13-cv-02918 (S.D. Tex.).

Sasol plans to build a $20 billion "gas to liquid" ("GTL") natural gas processing facility in Louisiana and is managing the project from Houston, Texas.

The crux of the Texas matter is whether the process to be utilized in Sasol's facility infringes upon the GTL process patent held by GTLpetrol LLC ("Petrol"), a patent holding company whose purpose is the marketing and enforcement of its intellectual property. In 2010-2011, Sasol entered into discussions with Petrol to determine whether the two might partner in Sasol's expansion into the United States, but Sasol later decided not to pursue the business relationship. In December 2012 Sasol announced its plans to build the Louisiana facility and in March 2013 Petrol sent Sasol its first "cease and desist" letter claiming that the planned facility would infringe on Petrol's trade secrets and GTL patented technology. Sasol then filed the Texas action in October 2013 seeking a declaratory judgment that, *inter alia*, Petrol's patent claims are invalid, that Sasol's construction and operation of the GTL plant have not and will not infringe any valid patent claims, and that Sasol has not misappropriated any Petrol trade secrets.

Both the Texas case and this matter are complicated by the relationships between Petrol and the third parties from which documents have been subpoenaed. Sasol seeks documents from a list of non-party entities that specialize in the marketing and/or enforcement of intellectual property. These non-parties are collectively referred to by both parties as Kansas State University Institute for Commercialization ("KSU-IC").[3] An abbreviated timeline of the entities' relevant business activity is as follows:

---

[3] The subpoena is directed to KSU-IC, along with the National Institute for Strategic Technology Acquisition and Commercialization ("NISTAC"), Mid-America Commercialization Corporation ("MACC"), and Mid-American Technology Management, Inc. ("MTM"). KSU-IC admits that it

- September 2001:  Filing of U.S. Patent No. 6,534,551 ("Patent '551'"), titled "Process and apparatus for the production of synthesis gas."  This patent is a subject of the 2006 Exclusive License Agreement between KSU-IC and Petrol and is the patent specifically referenced in Petrol's written demands to Sasol.[4]

- 2003:  Air Products & Chemicals, Inc., a Pennsylvania-based company, donates[5] EHTR[6] technology and GTL-related patents to KSU-IC, known as Mid-America Commercialization Corporation ("MACC") at that time (*see* n.4).

- August 2006:  Petrol is organized.

- September 2006:  KSU-IC, known as the National Institute for Strategic Technology Acquisition and Commercialization ("NISTAC") at that time (*see* n.4) licenses the EHTR technology to Petrol.[7]

- May 2010-2011:  Sasol and Petrol discuss a possible business relationship including executing a confidentiality agreement.

- December 2012:  Sasol announces its plans to build the Louisiana facility.

In its Certificate of Interested Parties filed in the Texas action, Petrol identifies both KSU-IC and respondent Mid-American Technology Management, Inc. ("MTM") as the only entities aside from Petrol with a financial interest in the outcome of the Texas litigation.[8]

### Sasol's Motion to Compel Compliance (Doc. 1)

Consistent with Fed. R. Civ. P. 45, Sasol served its document subpoena on non-party KSU-IC on March 26, 2014, to which KSU-IC responded by letter on April 9, 2014.  After multiple communications between the parties, KSU-IC failed to produce any

---

was formerly known as NISTAC, which was formerly known as MACC, and that MTM is a subsidiary of KSU-IC.  Therefore, KSU-IC responds on behalf of all entities and collectively refers to the entities as KSU-IC for the purposes of this motion.

[4] Addendum A to Exclusive License Agreement, Doc. 1, Ex. PX-3, at 17.

[5] Technology Donation Agreement, Sasol's Mot. Doc. 1, Ex. PX-2, at 6.

[6] EHTR stands for "Enhanced Heat Transfer Reforming" technology.  The EHTR technology pre-dates the GTL technology and is the "know-how" that forms the basis of the GTL technology at issue.

[7] Exclusive License Agreement, Sasol's Mot., Doc. 1, Ex. PX-3, at 3.

[8] Petrol's Certif., Doc. 11, *Sasol North America et al. v. GTLpetrol LLC, et al*., Case No. 4:13-cv-02918 (S.D. Tex.).

requested documents. Sasol filed its motion to compel in this court as required by Fed. R. Civ. P. 45(d)(2)(B)(i) on May 20, 2014. On June 18, 2014 the court held a telephone conference to discuss the pending motion, and at the court's direction, counsel for Sasol submitted to KSU-IC nine proposed search terms to be used in the production of electronically stored information ("ESI") and other documents responsive to the subpoena. The parties did not agree on the usage or scope of the search terms and after further review of the June 25, 2014 correspondence from both counsel, the court is now prepared to rule.

**A.     Sasol's Requests**

The subpoena required KSU-IC to produce by April 10, 2014 any documents responsive to 50 separate requests which Sasol divides into the following five categories:

   1.     <u>Petrol Communications</u> (Request Nos. 1-4)

Sasol asks KSU-IC to produce "all materials sent to or from" KSU-IC to Petrol, two individual Petrol members, and Dignitas Partners (a private equity firm owned by a Petrol member) from the year 2000 to the present.

   2.     <u>Petrol Materials</u> (Request Nos. 5-11)

These requests seek all information from 2006 (the year of Petrol's formation) to the present which are "related to" any payments to or from KSU-IC and Petrol; all agreements with or related to Petrol (including drafts); any materials related to Petrol's organization, management and formation; all Petrol marketing materials; all Petrol financial reports; and all communications between KSU-IC and Petrol related to this lawsuit and/or the underlying IP issues.

   3.     <u>Air Products Materials</u> (Request Nos. 14-17, 25)

KCU-IC is asked to produce "all materials sent to or from Air Products from 2000-present" related to EHTR, Petrol, and any technology donated by Air Products to KSU-IC. Sasol also demands all materials sent to or from

4

Dennis Brown[9] from 2000 to the present related to EHTR, Petrol, or donated technology, and "all materials related to the December 26, 2003 Technology Donation Agreement with Air Products."

    4.        <u>Petrol Patent Materials</u> (Request No. 48)

This request seeks "all patent infringement and/or validity analyses related to any patents licensed to Petrol." Sasol claims that Petrol's only business relates to the IP at issue and that the request is therefore limited to 2006 (the year Petrol was formed) to the present.

    5.        <u>Exclusive License Agreement Materials</u> (Request Nos. 23, 24, 26-50)

Request Nos. 23, 24, and 26-42 involve the 2006 licensing agreement between NISTAC (predecessor of KSU-IC) and Petrol. They seek "all materials related to" the agreement itself and to the "Technology Acquisition, Development, and Commercialization Program" referenced in the agreement including all drafts, modifications, and exhibits. The requests also seek materials "related to" specific sections of the agreement.

Request Nos. 43-50 seek materials related to the 2003 Technology Donation Agreement between Air Products and MACC (predecessor of KSU-IC). These include requests for valuation of the donated technology, confidential materials referred to in the agreement, payments to/from Air Products and KSU-IC from 2000 to present, all analyses of patent infringement/validity related to the donated technology, insurance policies related to the donation agreement or the licensing agreement, and "all materials related to" the "know-how" referenced in the donation agreement.

The remainder of the requests included in the subpoena, Request Nos. 12-13 and 18-22, are absent from Sasol's motion to compel. During the status conference, counsel for Sasol acknowledged that those requests have been abandoned.

---

[9] Dennis Brown's involvement in this matter is unknown. His identity is not explained in the briefing.

5

**B.     KSU-IC's objections**

In its April 9, 2014 letter, KSU-IC offers general objections to the entire subpoena. In its response to Sasol's motion, KSU-IC provided a table of objections specific to each request, but these are largely restatements of its original objections. To date, the court is unaware of whether any documents have been produced by KSU-IC.

Each party asserts arguments regarding the timeliness of objections and of the motion itself. KSU-IC also objects that the subpoena is improperly directed to third parties when the information could be more easily and efficiently obtained by party defendant Petrol; that the requests are overly broad and unduly burdensome; and that the requests seek confidential information and information protected by the attorney-client and work product privileges. The parties' arguments are addressed in greater detail below.

**C.     Technical Requirements**

Before turning to the merits of the motion, the court addresses both parties' technical arguments regarding timeliness under D. Kan. Rule 37.1 and compliance with D. Kan. Rule 37.2. First, each party presents an argument about the other's untimeliness, both with regard to KSU-IC's objections and Sasol's filing of this motion. The court finds fault in both parties' approaches. D. Kan. Rule 37.1(b) provides that any motion to compel must be filed within 30 days of the discovery response, and Sasol's motion was technically 11 days late. However, that delay was due in part to KSU-IC's continued promises to provide the documents in counsel's possession and the demonstrated efforts of the parties to confer. As for KSU-IC's timeliness, its initial objection letter was received by Sasol

within the 14 days allowed by Fed. R. Civ. P. 45, but its table of specific objections was not presented until the filing of its response to Sasol's motion and there could be a valid issue of whether KSU-IC properly preserved its objections. Despite Sasol's protest, all objections outlined in that table were included in the initial letter even if not separated by specific request, and the court rejects both parties' arguments regarding timeliness.

KSU-IC then contends that the Sasol's motion must be denied for failure to certify compliance with the duty to confer under D. Kan. Rule 37.2. The parties' briefing includes copies of email correspondence and evidence of phone correspondence between counsel. Under the circumstances, the court finds that the parties have demonstrated substantial compliance with D. Kan. Rule 37.2 and overrules both parties' technical arguments in order to consider the substance of Sasol's motion.

## D.  Burden to Non-Party

The core of KSU-IC's objections is that the requested discovery is overly burdensome to KSU-IC as a non-party. Fed. R. Civ. P. 45 provides guidelines for the issuance of subpoenas to non-parties. Non-parties are "generally offered heightened protection from discovery abuse"[10] and Rule 45(d)(3)(A)(iv) provides that a court "must quash or modify" a third-party subpoena if it "subjects a person to undue burden." Further, Rule 26(b)(2) requires the court to limit the extent of discovery if it determines that it can

---

[10] *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 407, 418-19 (D. Kan. 2009) *rev'd in part,* 707 F. Supp. 2d 1145 (D. Kan. 2010) (rev'd on issue of First Amendment associational privilege) (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* Case No. 05–2164, 2007 WL 2122437, at *4 (D. Kan. July 20, 2007) and *Hefley v. Textron, Inc.,* 713 F.2d 1487, 1497 n. 2 (10th Cir.1983)).

be obtained from another source "that is more convenient, less burdensome, or less expensive."

To determine whether the non-party is subjected to undue burden, the court uses a "case-specific inquiry that turns on 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'"[11] The court must then balance the party's need for discovery against the burden created for the producing entity, and "the status of a person as a non-party is a factor that weighs against disclosure."[12] The court examines these factors in detail below.

After review of the discovery requests served in the Texas case[13] the court notes that Sasol did not make similar requests to Petrol, the party defendant. Although Sasol argues that KSU-IC is more likely to possess responsive information than Petrol, that argument is unsupported by evidence and therefore rejected. Sasol has failed to demonstrate to this court's satisfaction why it served this all-encompassing subpoena to the third parties without first attempting to access the breadth of information from the party defendant. However, by applying the standard for the scope of discovery,[14] the court believes that it is not clear that the information sought by Sasol could have "no possible

---

[11] *Id*. at 419 (citing *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.,* 211 F.R.D. 658, 662 (D.Kan.2003)).
[12] *Id*.
[13] A copy of the discovery was produced to the court following the June 18, 2014 conference.
[14] The scope of discovery under a subpoena is the same as that under Fed. R. Civ. P. 26(b). *See Goodyear Tire & Rubber Co.,* 211 F.R.D. at 662.

bearing" on the claims or defenses of either party and therefore finds the requests to be at least minimally relevant.[15] The relevance of the requests weighs in favor of production.

But relevance must be considered in relation to the burden to the non-party. KSU-IC claims that responding to the subpoenas would impose an undue burden on the organization because of its limited staff and resources. In support of this argument, KSU-IC submitted a declaration by its president, Kent Glasscock. The court finds the declaration to be conclusory and it provides no empirical evidence. Additionally, Sasol argues that Petrol is contractually obligated to indemnify KSU-IC for the costs associated with any production. In the Exclusive License Agreement between Petrol and KSU-IC, Article X specifically addresses those circumstances in which Petrol would be obligated to indemnify KSU-IC for expenses arising from the use or practice of the subject patent rights.[16] It is unclear whether the request to KSU-IC by Sasol could be defined as a "claim" under the indemnification clause and this court makes no findings of that nature. However, the presence of this clause seems to shift the balance away from an undue burden on KSU-IC.

The potential for indemnification, combined with the unusual business relationship between KSU-IC and Petrol, and the clear financial interest of KSU-IC in the Texas litigation lead to the conclusion that KSU-IC has not satisfied its duty to prove substantial burden. Under these unusual facts, the court believes that KSU-IC has the duty of *some*

---

[15] *Booth v. Davis*, 2011 WL 2008284, at *6 (D. Kan. May 23, 2011) (citing *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001)).
[16] Exclusive License Agreement (Mot., Doc. 1, Ex. PX-3).

production—particularly given its repeated promises to Sasol which have never come to fruition.

Even so, the breadth of the requests and expansive time frame from which Sasol requests production must be considered. Many of Sasol's requests seek the production of "all materials" which "related to" other documents, the technology at issue, or the underlying lawsuit. Some requests go so far as to include "all drafts, modifications, and exhibits," and many seek information as far back as the year 2000. A request for 14 years of "all materials" from a non-party appears presumptively overbroad, particularly when sought first from a non-party rather than through party discovery.

At this juncture, considering the early stages of discovery in the Texas case and the lack of urgency in production given the denial of Petrol's motion to dismiss,[17] the court believes *some* production is appropriate. After weighing the factors above, the court will limit that production until discovery from the party defendant Petrol has been fleshed out.

### E.   Confidentiality and Privilege

KSU-IC raised concerns that the production requested by Sasol would include confidential information such as trade secrets. Following the status conference and after the conclusion of briefing, the court approved the parties' agreed Protective Order (Doc.

---

[17] At the time Sasol filed its motion to compel, Petrol's motion to dismiss was pending in the Texas action. Sasol argued that time was of the essence for the production of documents by KSU-IC because it believed that KSU-IC possessed documents that would affect the issues in the motion to dismiss. However, on June 24, 2014, Judge Vanessa Gilmore denied Petrol's motion to dismiss, and this court sees no urgency in Sasol's instant motion. A Patent Scheduling Order was only recently entered in that case on August 5, 2014. *See Sasol North America et al. v. GTLpetrol LLC, et al.*, Case No. 4:13-cv-02918 (S.D. Tex.) (Doc. 32).

17). That order applies to any information produced by KSU-IC responsive to the subpoena. Therefore, KSU-IC's argument regarding the potential release of confidential and trade secret information is considered moot.

**F.     Mid-America Technology Management ("MTM")**

Although Sasol also directed its subpoena to non-party MTM, KSU-IC asserts that MTM is a subsidiary of KSU-IC and has no responsive documents in its custody or control. Sasol presented no evidence to the contrary, and during the court's status conference, the parties agreed that the motion to compel should be **DENIED** as to MTM and that MTM should be dismissed from this action and relieved of any duty to separately respond to the subpoena.

**G.     Fees**

KSU-IC asks that it and MTM be awarded their fees for opposing the motion. Pursuant to Fed. R. Civ. P. 45(d)(1), if the court finds that the party or attorney has failed to avoid undue burden or expense on the person subject to the subpoena, the court should impose an appropriate sanction. Here, the court finds no bad faith on the part of Sasol given the complicated relationship between KSU-IC and the party defendant Petrol. The court finds it appropriate and just for the parties to bear their own expenses incurred in connection with this motion.

## Conclusion

Applying the balancing test above, the court finds that an order of limited production is appropriate and **GRANTS** Sasol's motion as follows: On June 19, 2014, Sasol proposed nine search terms to KSU-IC for use in locating responsive ESI. These search terms largely align with Sasol's earlier communication to KSU-IC requesting "all emails and documents referencing potential infringement of the '551 patent, valuations of the patent, and KSU-IC's financial interest in GTLpetrol."[18] Using the terms proposed by Sasol in the June 19, 2014 email, KSU-IC must examine and produce its ESI, including emails, attachments, exhibits, and word processing documents, which contain those nine search terms. The search and production of responsive ESI shall be narrowed in time to begin on May 1, 2010 (the date of Sasol's initial discussions with Petrol) to the present.[19] While the court does not make any finding that this time frame should embrace all relevant information within KSU-IC's control, this limited production will achieve an initial disclosure of responsive information while balancing any burden to the non-party KSU-IC.

The parties are referred to this court's Guidelines for Cases Involving Electronically Stored Information available on the court's website.[20] Paragraph 12 of those guidelines states: "[M]ost parties' discovery needs will be satisfied from reasonably accessible sources. . . . If the responding party is not searching or does not plan to search sources containing potentially responsive information, it should identify the category or type of such information." Likewise, if KSU-IC determines that responsive information is

---

[18] *See* May 13, 2014 email from Sasol counsel to KSU-IC counsel, Doc. 1, Ex. PX-8.
[19] *See* Sasol's Am. Compl., attached as Ex. B to KSU-IC's Resp. in Opp., Doc. 10, at 7.
[20] *See* http://www.ksd.uscourts.gov/attorney-resources-case-management/.

protected by privilege, it must carefully comply with Fed. R. Civ. P. 45(e)(2)(A) to expressly make the claim and specifically describe the information withheld.

While this search methodology may entail some burden to KSU-IC, given the relationship between Petrol and KSU-IC and the repeated promises to produce by KSU-IC, the court does not find the burden to be undue.[21]  The court recognizes that the production may, and likely will, lead to necessary discovery of paper files and **DENIES** the motion without prejudice to future requests as Sasol engages in meaningful discovery from the party defendant and reviews the ESI production.

**IT IS THEREFORE ORDERED** that Sasol's motion to compel compliance (Doc. 1) is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE** as set forth above.

**IT IS FURTHER ORDERED** that by **August 29, 2014**, KSU-IC shall produce to Sasol and this court a status report regarding its plan for implementation of the search methodology.  The court expects that significant production as ordered herein should occur no later than **October 24, 2014**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 8th day of August 2014.

_s/ Karen M. Humphreys_____
KAREN M. HUMPHREYS
United States Magistrate Judge

---

[21] *See Booth v. Davis*, 2011 WL 1008284, at *7 (D. Kan. 2011) (discussing that although compliance with a subpoena inevitably creates a burden for the producing party, inconvenience or expense are not sufficient reasons to deny production.)